648 So.2d 1143 (1995)
Betty M. ETHRIDGE,
v.
Billy C. ETHRIDGE.
No. 93-CA-00867.
Supreme Court of Mississippi.
January 12, 1995.
*1144 Lisa J. Howell, Jordan & Jones, Meridian, for appellant.
Lawrence Primeaux, Goldman & Primeaux, Meridian, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
Betty and Billy Ethridge were married on November 15, 1986, in Lauderdale County, Mississippi. The parties remained married for six years, until October 31, 1992, at which time the couple chose to separate. Subsequently, in January, 1993, the parties submitted an irreconcilable differences decree with three issues for the chancellor's decision: 1) whether to award Betty Ethridge alimony; 2) whether attorney's fees were to be paid by one or both parties; and 3) whether court costs were to be paid by one or both parties.
A hearing was held on July 14, 1993, with the Honorable George Warner presiding. The following facts were developed during the course of the hearing.
At the time the parties divorced, Betty was 62 years old, was working part-time and was receiving monthly social security income. Betty testified that the couple had lived at 4303 North Hills Street during the course of their marriage but that the home was owned by Billy prior to their marriage and he had built and paid for the entire construction. She further discussed a $5,000.00 life insurance policy in her name. However, she stated that she did not intend on cashing it in as she wanted the funds to be used by her children to bury her. Betty also testified that Mr. Ethridge had certificates of deposit in his name valued over $100,000.00, i.e., sufficient funds to meet her request for alimony. However, Betty also stated that these instruments were obtained by Mr. Ethridge prior to their marriage and were titled solely in his name.
Billy was 67 at the time the parties separated, was drawing social security, and had worked part time doing carpentry work up and until his last surgery for hernia repair in 1993. Billy began drawing his social security benefits at age 62, shortly after the parties married. He also lived on the interest he drew from his certificates of deposit.[1] Billy testified that he provided the majority of the couple's living expenses during the marriage (bills, maid service) and he also conceded *1145 that Betty's standard of living would go down, as a result of the separation. Betty conceded that, absent her having to pay rent for a place to live, she and Mr. Ethridge had roughly the same standard of living and monthly expenses. Betty, as part of the consent decree, obtained the couple's 1989 Buick automobile, which Billy paid for.
According to the testimony, Billy had approximately $156,000 in equity from his home, tools and equipment, 1990 automobile and certificates of deposit, so that his standard of living would not decrease as a result of Betty leaving the marriage. When asked what property (real and/or personal) the couple acquired during the course of the marriage, Billy responded "none."
After hearing all the testimony, the chancellor ruled from the bench that the parties would be granted a divorce on the grounds of irreconcilable differences. The chancellor then ruled that court costs would be divided equally between the parties and that each party would be responsible for their respective attorney's fees. The chancellor then considered the issue of whether to award alimony and considered each of the twelve factors set forth in this Court's decision of Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993). The court noted that several of the factors were inapplicable to the case as there were no minor children involved, no wasteful dissipation of assets, no tax consequences, and no fault and/or misconduct.
The chancellor, considering the "catch-all" factor and differences in the parties income, determined that there was not a great difference, and that there had been some miscalculations with regard to Betty's net monthly income. The chancellor further found that there had been no jointly acquired property and that each party had sufficient personal income to pay for the necessities of life. In addition, while Betty had only $10,000.00 in assets and Billy had over $100,000.00, his equity was established and in existence prior to the marriage. Further, the chancellor considered the short duration of this marriage and the age of the parties.
After considering the applicable factors, the chancellor ruled that the facts did not necessitate an award of alimony to Mrs. Ethridge by Mr. Ethridge.
Aggrieved by the ruling of the chancellor, Betty perfected an appeal to this Court and assigns the following as error:
I. THE TRIAL COURT ERRED IN NOT AWARDING LUMP SUM OR PERIODIC ALIMONY TO BETTY ETHRIDGE

LAW

I. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN NOT AWARDING LUMP SUM OR PERIODIC ALIMONY TO BETTY ETHRIDGE?

Standard of Review
At the outset, it should be noted that this Court's recent decisions of Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994), post date the trial of the case sub judice. Further, the parties agreed to the disposition of marital property via the irreconcilable differences decree. Because equitable division of marital property is not at issue, and the sole issue is the failure to award alimony, neither Hemsley or Ferguson is relevant to the actual disposition of the issue raised. The facts and testimony reveal that this was a marriage of short duration and that Betty Ethridge left the marriage economically stronger than she entered, i.e. materially improved. Further, although Billy's assets substantially exceeded the value of Betty's assets, the uncontradicted evidence demonstrated that each party's assets had been acquired outside and prior to the marriage and under Hemsley and Ferguson, there would be no differing result in the marital property estate. We again state that non-marital property is not subject to equitable division. Therefore, the remainder of our discussion focuses on the factors utilized in awarding alimony.
"Our scope of review of an alimony award is well-settled. Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error *1146 in his finding of fact and abused his discretion." Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993) (citation omitted). This Court will not disturb a chancellor's ruling if the findings of fact are supported by credible evidence in the record. Hammett v. Woods, 602 So.2d 825, 837 (Miss. 1992) (citing Clark v. Myrick, 523 So.2d 79, 80 (Miss. 1988)).
The chancellor in determining whether to award Betty Ethridge alimony, applied the factors set forth in Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993). These factors include:
1. Income and expenses of the parties;
2. Health and earning capacity of the parties;
3. Needs of each party;
4. Obligations and assets of each party;
5. Length of the marriage;
6. Presence or absence of minor children in the home;
7. Age of the parties;
8. Standard of living of the parties both during the marriage and at the time of the support determination;
9. Tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party;
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Id. at 1280.
Betty contends that the chancellor incorrectly applied certain of the Armstrong factors. First, she argues that the earning capacity of each party is virtually equal. However, the testimony revealed that Billy Ethridge did not intend to resume his carpentry work full time and had recently undergone surgery for a hernia repair.
Betty also contends that the chancellor failed to fully consider the monetary differences between the non-marital assets of the parties. Testimony revealed that Betty had cash assets approximately in the amount of $10,000.00 (including a life insurance policy in her name and to be used by her children for her burial) and Billy had approximately $90,000.00 in certificates of deposit (excluding $14,000.00 loaned to his son). In support of her argument, Betty relies on this Court's opinion in Draper v. Draper, 627 So.2d 302 (Miss. 1993), which held, in part:
It is well-established by this Court that the chancery court has the authority to order an equitable division of property that was accumulated through the joint efforts and contributions of the parties... .
... .
... The chancellor in a divorce case now has the authority to divest title from one spouse, and vest it in the other spouse, when equitably dividing the marital assets.
... .
... This Court has stated that in determining what is an equitable division, the chancellor is not limited to a consideration of the earning and cash contribution of each party to the accumulation of the property. It is sufficient contribution if one party renders services generally regarded as domestic in nature.
Id. at 305-06 (citations omitted).
Betty's reliance on Draper is misplaced. In Draper, this Court addressed the equitable division of marital property, specifically the divestment of certain retirement funds and real and personal property in a situation in which the funds in question were attributable to the efforts of both spouses, i.e. were marital property. See Hemsley v. Hemsley, 639 So.2d 909 (Miss. 1994). In addition, the marriage of the parties in Draper had lasted for 25 years. Betty complains only of the chancellor's failure to award her alimony and offered no argument, either in the trial court or in her arguments to this Court, as to the division of the marital property. Betty removed from the marital home all personal items which she brought into the marriage and even removed the draperies which she paid for during the course of the marriage. She was clear about her non-marital assets but less so about Billy's. The record clearly indicates that Billy Ethridge owned his home and certificates of deposit outright prior to this marriage and that Betty Ethridge had *1147 lived with her mother prior to the marriage. These non-marital assets are not subject to equitable division. In addition, Betty complains that the chancellor failed to consider the domestic services rendered by her in his decision not to award alimony. However, the record clearly indicates that both parties performed such services and also employed a maid for these services. Therefore, the Draper case is distinguishable and unlike the facts of the present case. Since both parties agreed that there was no jointly acquired marital property, Betty's performance of domestic services did not contribute to the acquisition of divisible marital assets.
When there is no marital property to divide upon divorce, the Court looks to the Armstrong factors to determine whether or not an award of alimony is warranted.
In the case sub judice, the chancellor performed an Armstrong analysis and refused alimony, and this Court will not reverse or differ with this analysis.

CONCLUSION
Based on the foregoing authorities, we find that the chancellor correctly applied the Armstrong factors and was further correct in not requiring Billy to pay Betty $10,000.00 in lump sum and $400.00 per month periodic alimony. As such, we affirm the judgment of the Chancery Court of Lauderdale County.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] Billy testified that Betty never contributed financially in acquiring the certificates of deposit.