## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01487-SCT

*SIDNEY L. HOLCOMBE*

*v.*

*MILDRED BRANTON HOLCOMBE*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/10/2000 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | REEVES JONES |
| ATTORNEY FOR APPELLEE: | M. MARCIA SMALLEY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 4/04/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/25/2002 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. Mildred Branton Holcombe (Mildred) and Sidney L. Holcombe (Sidney) were married for forty (40) years. In 1991 the couple were granted a divorce. From 1991 to 1998, Sidney's annual gross business income had an estimated average of $138,576.00. In 1999, Sidney's gross business income dropped significantly to $61,116.00. As a result of his reduced income and deteriorating health, Sidney filed a Motion to Modify Prior Decrees in the Hinds County Chancery Court. A hearing was conducted on May 30, 2000. The chancellor entered an order on August 10, 2000, denying the modification. From this ruling, Sidney now appeals to this Court.

## FACTS

¶2. On March 21, 1991, Sidney and Mildred were granted a divorce after being married for 40 years. At the time of the divorce, Mildred was 67 and Sidney was 64. There were no children living in the home. The court awarded Mildred $2,200.00 in periodic alimony, as well as maintaining certain medical and insurance policies and payment of reasonable medical expenses not covered by insurance. In 1994, the original Judgment of Divorce was modified. Sidney conveyed his interest in a piece of real estate to Mildred in exchange for a reduction in the amount of court ordered life insurance carried for her benefit. Sidney stated that he now pays over $600.00 per month in life insurance for Mildred's benefit. Sidney provided all his federal and state tax returns from 1991 through 1999 for the trial court's review. At the time of the hearing Sidney was 73 years old.

¶3. Sidney has been a traveling salesman for 49 years. He is in the furniture sales business. In February,

1999, his best account, Frisco Manufacturing Company, filed for bankruptcy. Sidney had the account for 48 years and it was approximately 70% of his income. He picked up two lines but did not sell enough to justify maintaining the lines. The area Sidney covers includes Mississippi and Louisiana, Memphis and trips twice a year to Tupelo and North Carolina.

¶4. On average, Sidney testified that he drives 4,000 to 5,000 miles per week. Sidney has only one eye and it suffers from "floaters." This condition can blur his eye and makes night driving difficult. Sidney testified that he cannot drive at night and has to spend the night in a motel if it starts to get dark on the way home from a job. In addition, Sidney testified that he has back problems for which he sees a chiropractor.

¶5. Sidney testified that he had the following income prior to taxes from 1995 through 1999 and made the following alimony payments:

| Year | Gross Income | Alimony Payments | Alimony Percent of Gross |
|------|--------------|------------------|--------------------------|
| 1995 | $168,401.00 | $30,529.00 | 18.13 |
| 1996 | $143,572.00 | $33,000.00 | 23 |
| 1997 | $181,257.00 | $31,350.00 | 17.29 |
| 1998 | $176,812.00 | $33,006.00 | 19 |
| 1999 | 76,648.00 | 31,913.00 | 42 |

There was a significant drop in gross business income from $146,187.00 in 1998 to $61,116.00 in 1999. Sidney earned $76,648.00 in 1999 and of that amount, $61,116.00 was business income and $11, 244.00 was a mandatory IRA distribution. Sidney also received $3,763.00 in Social Security benefits. In 1999, Sidney paid Mildred $31,913.00 which represented 42% of his total income and 51% of his business income. Sidney began receiving Social Security income on 1995 and mandatory retirement withdrawals in 1997.

¶6. On February 3, 2000, Mildred Gill (Gill), daughter of Mildred and Sidney, became Mildred's conservator. Mildred is suffering from Parkinson's disease and dementia. At the time of the hearing Mildred was 77 years old.

¶7. Mildred has had some difficulties coping. According to Gill, Mildred has left the stove top eye on and the kitchen and walls were hot; the telephone is color coded for each family member's number; various family members speak to Mildred up to 25 times a day or more; family checks on her twice a day; and she has had difficulty dressing (i.e., she put a dress on upside down). Gill stated that the family uses Mildred's car to drive her to places. No medical evidence was introduced at trial, although the trial court took judicial notice that a conservatorship was opened on Mildred's behalf which requires two doctors to certify a patient cannot care for themselves or their affairs.

¶8. Gill testified to Mildred's assets which included 80 acres of unencumbered land that was appraised at $80,000.00; a condominium in Brandon estimated at $100,0000.00; and $18,000.00 in savings. Mildred also owns a car and pays insurance but does not drive the car.

¶9. After taking the above into consideration and finding the sole grounds offered by Sidney for the alimony modification to be his decrease in income and deteriorating health, the chancellor refused to modify the divorce decree. He found there was no material change in Sidney's circumstances warranting modification.

In support of this position, the chancellor noted that Sidney's spending habits and lifestyle had not changed as a result of losing the Frisco Manufacturing furniture line; he was still able to travel and had not missed work since the loss of the Frisco line; he had new sources of income from his mandatory retirement and social security payments; and he was capable of adding and selling new lines of furniture, and had already done so, providing a substantial wage. From this ruling Sidney appeals.

## STANDARD OF REVIEW

¶10. "Our scope of review of an alimony award is well-settled. Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion." *Ethridge v. Ethridge*, 648 So.2d 1143, 1145-46 (Miss. 1993)(citing *Armstrong v. Armstrong*, 618 So.2d 1278, 1280 (Miss.1993)). *See also Voda v. Voda*, 731 So.2d 1152, 1154 (Miss. 1999); *Traxler v. Traxler*, 730 So.2d 1098, 1104 (Miss. 1998); *Parsons v. Parsons*, 678 So.2d 701, 703 (Miss. 1996). The ruling of the chancellor will not be disturbed if the findings of fact are supported by credible evidence in the record. *Id*.

¶11. When a petitioner requests a modification in periodic alimony, the court may order either an increase, decrease or termination of the alimony award. *Ivison v. Ivison*, 762 So.2d 329, 333 (Miss. 2000). A chancellor has the authority to modify periodic alimony "upon a finding of a substantial change in circumstances, regardless of any intent expressed by the parties to the contrary." *McDonald v. McDonald*, 683 So.2d 929, 931 (Miss. 1996). The change in circumstance must not be anticipated by the parties at the time of the original decree. *Ivison*, 762 So.2d at 333.

¶12. The chancellor considers the *Armstrong* factors to determine an award of alimony. *Id*. These factors include:

1. Income and expenses of the parties;

2. Health and earning capacity of the parties;

3. Needs of each party;

4. Obligations and assets of each party;

5. Length of the marriage;

6. Presence or absence of minor children in the home;

7. Age of the parties;

8. Standard of living of the parties both during the marriage and at the time of the support determination;

9 . Tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party;

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of

spousal support.

*Ethridge*, 648 So.2d at 1145-46 (citing *Armstrong v. Armstrong*, 618 So.2d at 1280). On appeal, this Court presumes that the chancellor considered all factors in the decision. *Voda*, 731 So.2d at 1155. We will now review the facts of this case from the record in light of these factors.

### 1. Income and expenses of the parties.

¶13. Sidney argues that his gross business income has dropped from an average of $138,576.00 from 1991 through 1998. In the last five years prior to filing the motion to modify alimony his average gross business income was $153,348.00. However, in 1999 his average gross business income was $61,116.00. Sidney began receiving social security benefits in 1994 and mandatory retirement withdrawals in 1997. Mildred has received approximately $31,000.00 in alimony payments each year. Sidney claims that he paid 42 % of his total income and 51% of his business income to Mildred in 1999.

¶14. Further Sidney contends that the loss in his income is due to no fault of his own. His client of forty-eight years, Frisco Manufacturing Company went into bankruptcy. This client generated the majority of Sidney's business income.

¶15. The chancellor stated that Sidney "argues that his income has decreased by 50% due to the loss of the Frisco line. However, the undisputed evidence proves that [Sidney] acquired two new lines of furniture which still provide substantial wages...." Clearly, Sidney's business income suffered a tremendous reduction from $146,187.00 in 1998 to $61,116.00 in 1999. This reduction is in fact more than a fifty percent reduction in business wages. Further, the chancellor erroneously stated that the two new lines "still provide a substantial wage." Sidney testified that he no longer has these two furniture lines. The lines did not sell well enough to justify continuing the line. Therefore, Sidney is earning no wage from these two lines.

¶16. Further, the chancellor stated that "according to his checking account statements he had, in fact, deposited an average of $11,585.00 each month from January 11, 2000 to May 8, 2000...." These figures represent monthly gross business income, not net income after expenses and taxes. There is no guarantee that the income will not be significantly reduced in 2000 as well.

### 2. Health and earning capacity of the parties.

¶17. Sidney is now 73 years old and continues to work four to five days a week. However, he provided testimony and medical records on his ailments. Sidney testified that he has had an increase in the need to visit a chiropractor for back problems. He provided medical records which showed an increase in the number of visits in 1999. Gill acknowledged that her father had back problems since she was a child. In addition, Sidney has only one eye. This eye has floaters which make it difficult to drive long hours at night on the road. Gill testified that she never knew her father to drive at night. While Sidney testified that he has kept the same work schedule up from the time of filing the motion up to approximately one month before the hearing, he testified that his conditions had worsened over time.

¶18. Mildred, on the other hand, is suffering from Parkinson's disease and dementia. No medical records were provided to the chancellor. However, judicial notice was taken of the filing of conservatorship for Mildred. The conservatorship requires two doctors to certify a patient cannot care for themselves or their affairs. Mildred has left the stove top eye on and the kitchen and walls were hot. The telephone is color coded for each family member's number because she cannot remember the numbers. Mildred speaks with

family members as much as 25 times a day or more. She now has some difficulty in dressing. Gill stated that Mildred no longer drives, however, the family uses Mildred's car to drive her to places.

### 3. Needs of each party.

¶19. The chancellor did not specifically address this factor, and there was no evidence offered to indicate Sidney's needs had grown or that Mildred's needs had diminished.

### 4. Obligations and assets of each party.

¶20. Sidney's assets consist of his income; a 2000 Nissan, which is being paid in installments; a few personal items listed on his financial statement; and his retirement account worth approximately $98, 0000.00. Sidney claims that he has to pay for his expenses and Mildred's alimony by using and at the same time depleting the money he receives as a mandatory retirement distribution.

¶21. Mildred has 80 acres of unencumbered land that was appraised at $80,000.00; a condominium in Brandon with an estimated appraisal of $100,0000.00; and $18,000.00 in savings. Mildred also owns a car.

### 5. Length of the marriage

¶22. Sidney and Mildred were married for forty years prior to their divorce in 1991.

### 6. Presence or absence of minor children in the home

¶23. At the time of the divorce, no children were living in the marital home.

### 7. Age of the parties

¶24. Mildred was 67 at the time of the divorce and 77 at the time of the modification hearing. Sidney was 64 at the time of the divorce and 73 at the time of the modification hearing.

### 8. Standard of living of the parties both during the marriage and at the time of the support determination.

¶25. The chancellor stated that Sidney purchased a 2000 automobile with large monthly payment despite his loss in income. The Chancellor cited *Grice v. Grice*, 726 So.2d 1242, 1252 (Miss. Ct. App.1998) for authority. In *Grice* the court refused to modify alimony payments where husband continued to "enjoy a good style of living" which included buying several vehicles for himself, his new wife and their daughter. *Id*.

¶26. Sidney, however, testified that he is a traveling salesman. He travels four to five days a week. This type of job, he argues, requires reliable transportation which is a business necessity and not a luxury. The Nissan vehicle is the only vehicle listed on Sidney's financial statement. Further, Sidney claims his circumstances are different than those in *Grice*. Even, Gill recognized the need for a car with "a little flash" to make clients feel good about a product.

¶27. In addition, Sidney claims that prior to 1999 , he was able to pay his expenses, pay Mildred alimony and save approximately $10,000.00 toward retirement. In 1999 he had to use some of his savings to pay for he alimony.

*9. Tax consequences of the spousal support order.*

¶28. The record is silent on this matter.

*10. Fault or misconduct.*

¶29. The original 1991 judgment of divorce was for irreconcilable differences.

*11. Wasteful dissipation of assets by either party.*

¶30. There is no evidence in the record of wasteful dissipation of assets by either party other than where the chancellor has noted no change in Sidney's lifestyle or spending habits.

*12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.*

¶31. The record is silent on this matter.

¶32. After reviewing these facts, we conclude that the chancellor did not err in refusing to modify the divorce decree in Sidney's favor. Surely Sidney's business suffered from the loss of the Frisco line in 1999 and his health continues to deteriorate with his increasing age. However, his lifestyle and spending habits indicate the loss in business had no effect upon his purchasing decisions. He admirably continues to work and had not missed any work up to the chancellor's hearing. Furthermore, he is a salesman of such quality that soon after losing the Frisco line, he was able to pick up two more lines to sell.

## CONCLUSION

¶33. The chancellor's determination was supported by the facts adduced at the hearing and from the submitted evidence. He did not manifestly err in his decision. We, therefore, affirm the chancellor's ruling denying modification of the alimony portion of the Holcombe's divorce decree.

¶34. **AFFIRMED.**

**McRAE AND SMITH, P.JJ., DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, JJ.**

**EASLEY, JUSTICE, DISSENTING:**

¶35. In my view, the majority errs in affirming the chancery court's determination that Sidney L. Holcombe is not entitled to a modification of his divorce decree.

¶36. Under Mississippi law, a petitioner is entitled to modification in periodic alimony when the chancellor has "a finding of a substantial change in circumstances, regardless of any intent expressed by the parties to the contrary." ***McDonald v. McDonald***, 683 So.2d 929, 931 (Miss. 1996). While alimony awards are within the chancellor's discretion, the ruling can be reversed where "the chancellor was manifestly in error in his finding of fact and abused his discretion." ***Ethridge v. Ethridge***, 648 So.2d 1143, 1145-46 (Miss. 1993)(citing ***Armstrong v. Armstrong***, 618 So.2d 1278, 1280 (Miss. 1993)).

¶37. Based on testimony presented at trial, the chancellor clearly made his decision on findings of fact

which were in error, and thus, abused his discretion. The majority errs in affirming the chancery court's ruling, which is based in part upon the same erroneous findings. Further, the majority, in my opinion, fails to address various factors of significant consideration to the request for modification. Consequently, the majority's ruling today results in a flawed outcome. Therefore, I respectfully dissent.

I.

¶38. The majority affirms the chancellor's ruling based most significantly upon a determination that Sidney's loss in income had no effect on his lifestyle, spending habits, and purchasing decisions. The majority does acknowledge that his business suffered from the loss of his main furniture line. Further, the majority notes that Sidney was able to pick up two other furniture lines after the loss of his main line.

¶39. However, the majority errs in basing its denial upon flawed considerations and in failing to address other concerns, including but not limited to, Sidney's substantial loss in income. The chancellor's opinion was manifestly wrong and failed to consider evidence that supports a finding of a change in material circumstance warranting a modification to periodic alimony. The majority erroneously relies upon the same information in its analysis and omits other relevant information from its determination.

II.

¶40. The chancellor found, in part, the following:

> ...**Plaintiff [Sidney] argues that his income has decreased by 50% due to the loss of the Frisco line. However, the undisputed evidence proves that [Sidney] acquired two new lines of furniture which <u>still provide substantial wages.</u>** The evidence also showed that [Sidney] had not missed any work since the loss of the Frisco line and that according to his checking account statements he had, in fact, deposited an average of $11,585.00 each month from January 11, 2000 to May 8, 2000. [Sidney] argued that all income and expenses went through this one checking account; **even accepting [Sidney's] statements as truth, this Court does not see a substantial decease in income. Perhaps more telling** to this Court is the fact that, **after the loss of the Frisco line, [Sidney] and his current wife maintained their spending habits and life style. Even after the alleged loss of 50% of his income, [Sidney] and his wife continued to "enjoy a good style of living" including, but not limited to purchasing a 2000 automobile with large monthly payments. *See Grice v. Grice*, 726 So.2d 1242, 1252 (Miss. [Ct. App.] 1998)(refusing to modify alimony payments where husband continued to "enjoy a good style of living" including purchase of several vehicles).** It is clear to this Court that [Sidney's] income has not decreased to the level where his spending habits have been altered; therefore, his income has not decreased to the level where Defendant [Mildred] should be forced to alter her spending habits to accommodate a decrease in alimony.

> This Court acknowledges that health generally does deteriorate with age. However, even accepting [Sidney's] contentions concerning his health as fact, there has been no material change in circumstances to warrant a modification of alimony. Despite his age and health, [Sidney] has been able to attract new furniture lines, and has been able to continue to work as a traveling salesman. Mississippi's law is clear that the Court may not modify alimony based upon the eventual onset of age, health problems, or retirement; modifications must be based upon present, not future, circumstances. *See Tudor v. Tudor*, 494 So.2d 362 (Miss. 1986). As stated previously, alimony may be modified

only where there is a substantial change in circumstances. The possibility that [Sidney's] health will continue to decline and that [Sidney] will eventually be forced to retire does not now constitute a material change in circumstances. Modification is not properly predicated upon eventualities and possibilities. Therefore, this Court finds that while retirement and health issues may at some point constitute a material change, that is simply not the case at this time.

Therefore, this Court finds that [Sidney's] motion is not well taken and is hereby denied. There has been no material change in circumstances warranting a reduction in [Sidney's] obligation to pay periodic alimony to [Mildred]. [Sidney] is hereby ordered to continue alimony payments in accordance with the 1994 modification....

(emphasis added).

## III.

¶41. As the main support for denying the modification the majority cites that Sidney's lifestyle and spending habits suggest that the loss in business did not alter his purchasing decisions. In its summary, the majority does not cite specific examples of the lifestyle and spending habits in question. Presumably, however, the majority is relying upon the chancellor's findings and its own determination under the *Armstrong* factors. The chancellor found the following:

Perhaps more telling to this Court is the fact that, after the loss of the Frisco line, [Sidney] and his current wife maintained their spending habits and life style. Even after the alleged loss of 50% of his income, [Sidney] and his wife continued to "enjoy a good style of living" including, but not limited to purchasing a 2000 automobile with large monthly payments. *See **Grice v. Grice***, 726 So.2d 1242, 1252 (Miss. [Ct. App.] 1998)(refusing to modify alimony payments where husband continued to "enjoy a good style of living" including purchase of several vehicles). It is clear to this Court that [Sidney's] income has not decreased to the level where his spending habits have been altered; therefore, his income has not decreased to the level where Defendant [Mildred] should be forced to alter her spending habits to accommodate a decrease in alimony.

To the extent that the majority is relying upon the chancellor's findings, citing Sidney's purchase of a 2000 Nissan vehicle as evidence of enjoying a good lifestyle, the conclusion is unfounded. Sidney argues that reliable transportation is a business necessity not a luxury. I agree.

¶42. Sidney travels four to five days as a furniture salesman. Reliable transportation is part and parcel to the job of a traveling salesman. Even Sidney's daughter recognized that a respectable vehicle aids a salesman in his business. Furthermore, based on Sidney's financial statement, this is the only vehicle that he owns.

¶43. In addition, the chancellor cited ***Grice v. Grice***, 726 So.2d 1242, 1252 (Miss. Ct. App. 1998) for authority. In ***Grice***, a husband was refused a modification of alimony when he enjoyed a good style of living as evidenced by the purchase of vehicles for his new wife, their daughter and himself. Clearly, Sidney's case is distinguishable from the facts in ***Grice***. Sidney has one car bought for the purpose of reliable transportation for his sales position. This car enables him to see his clients, generate income and, thus, make alimony payments to Mildred.

## IV.

¶44. This Court reviews only the record that is before it on appellate review and confines itself to what is presented in the record. ***Ditto v. Hinds County***, 665 So.2d 875, n. 880 (Miss. 1995). The record shows that Sidney's income dropped significantly from 1998 to 1999 as evidenced by his tax returns. In fact, his business income dropped from $146,187.00 in 1998 to $61,116.00 in 1999, these figures are recognized by the majority in its opinion. Indeed, the majority states that Sidney suffered a "tremendous reduction" in his 1999 income. Further, Sidney paid Mildred 42% of his total income, which was 51% on his business income in 1999. Whatever way the income is viewed, Sidney paid an astronomically high portion of his 1999 income to Mildred in alimony. The majority does not appear to consider this significant drop in Sidney's income nor the consequently high proportion of total income payments to Mildred in its final determination.

¶45. The primary cause of the decrease in income appears to be from the loss of a business client of forty-eight years. This loss was not due to Sidney's actions, but rather the client's own financial difficulties. This client alone generated approximately 50% of Sidney's income each year.

¶46. The chancellor based the modification denial in part upon the erroneous belief that Sidney was earning a substantial wage from two new furniture lines. The chancellor stated the following:

> ...Plaintiff [Sidney] argues that his income has decreased by 50% due to the loss of the Frisco line. However, the undisputed evidence proves that [Sidney] acquired two new lines of furniture which <u>still provide substantial wages.</u> The evidence also showed that [Sidney] had not missed any work since the loss of the Frisco line and that according to his checking account statements he had, in fact, deposited an average of $11,585.00 each month from January 11, 2000 to May 8, 2000. [Sidney] argued that all income and expenses went through this one checking account; even accepting [Sidney's] statements as truth, this Court does not see a substantial decease in income.

¶47. Sidney testified that the lines did not sell well enough to justify continuing the account. Consequently, Sidney no longer had the two lines with which to generate income, a fact noted in the majority opinion. Clearly the chancellor relied upon an erroneous finding when he maintained that Sidney has a "substantial wage" generated by two non-existent furniture lines. On this point, that majority and I are in agreement. The majority states that "the chancellor erroneously stated that the two new lines 'still provide a substantial sum.'" Yet, the majority appears inconsistent and illogical in its conclusion.

¶48. Despite acknowledgment of the chancellor's error concerning the two furniture lines, the majority only commends Sidney's sales abilities. Sidney is provided no relief. Rather, the majority hangs its hat on Sidney's lifestyle and spending habits. The chancellor's error appears to be of no consequence, just like the incredible reduction in income, and is not considered further by the majority. As noted above, a reliable vehicle for a salesperson is not, in my opinion, an inappropriate purchase. Reliable transportation is a necessary business expense.

¶49. Further, the chancellor relied upon gross business receipts, not net income, for income generated from January through May 2000. Therefore, the deposited money still had to have both expenses and taxes subtracted from each month's sum. Sidney's 1999 tax return showed a substantial loss income for 1999. Curiously enough, the majority states that "there is no guarantee that the income will not be significantly reduced in 2000 as well." This assertion appears to be contrary to the majority's final outcome. V.

¶50. While Sidney continues to work, the record demonstrates a change in Sidney's health and medical

conditions since the time of the divorce. He provided medical records at trial. Among other things, he has had increased problems with his back which requires increased medical attention and one eye. Arguably, Mildred has her own health problems which require attention.

¶51. As for his assets, the decline in income has adversely effected his ability to maintain his assets at their current level. He is currently depleting his income and has to use money received in mandatory retirement distributions to assist in the alimony payments. At 73, Sidney is, in reality, being punished for continuing to work.

VI.

¶52. For the above reasons, I respectfully disagree with the majority opinion. The chancellor was manifestly in error in his findings of fact and abused his discretion. There were material changes in circumstance to warrant a modification in alimony. To the extent that the majority bases its ruling on the chancellor's findings, the problem is only compounded. In addition, there was significant testimony at trial probative to the issue of modification which the majority fails to consider in its determination. Indeed, the majority acknowledges tremendous losses in Sidney's 1999 income and errors by the chancellor, yet, never adequately addresses the impact of the decreased income in its conclusion. Lastly, while Mildred's health concerns have not gone unnoticed, the facts of this case warrant a modification of the alimony payments. Accordingly, I would reverse and remand to the chancery court for a hearing on the matter.

**WALLER AND COBB, JJ., JOIN THIS OPINION.**