803 So.2d 1214 (2001)
Linda Elizabeth (Crouch) MOORE, Appellant,
v.
Lonnie David MOORE, Appellee.
No. 2000-CA-00243-COA.
Court of Appeals of Mississippi.
June 12, 2001.
Rehearing Denied September 18, 2001.
Certiorari Denied January 10, 2002.
*1215 D. Russell Jones, Jr., Attorney for Appellant.
David Lee Robinson, Farese, Farese & Farese, P.A., Ashland, Allison Farese Thomas, Attorneys for Appellee.
Before McMILLIN, C.J., IRVING, and CHANDLER, JJ.
CHANDLER, J., for the court:
¶ 1. Linda Moore was granted a divorce from Lonnie Moore on the ground of habitual, cruel and inhuman treatment. Lonnie and Linda were ordered to sell their marital home and use the proceeds to pay their outstanding debts and attorneys' fees. Linda was awarded $800 a month in periodic alimony. Linda cites the following issues on appeal:

*1216 I. WHETHER THE TRIAL COURT ERRED IN REQUIRING THE MARITAL HOME TO BE SOLD.
II. WHETHER THE TRIAL COURT ERRED IN AWARDING LINDA $800 A MONTH IN PERIODIC ALIMONY.
III. WHETHER THE TRIAL COURT ERRED IN NOT ORDERING LONNIE TO PROVIDE LINDA WITH MEDICAL INSURANCE.
Finding no error, we affirm.

FACTS
¶ 2. On October 7, 1998, Linda Moore filed for divorce from Lonnie Moore alleging habitual, cruel, and inhuman treatment, habitual drunkenness and irreconcilable differences. They had been married approximately thirty years. Following the hearing of the motion for temporary support, the chancellor granted Linda $1000 a month in temporary support.
¶ 3. At trial, Linda testified that Lonnie "cussed her out" daily, abused her physically, drank heavily and "took pills." Linda also testified that she receives $400 a month in social security benefits based on a medical disability. She testified that she suffers from acute asthma, a hernia, gallbladder problems, thyroid problems, arthritis, and emotional problems caused by Lonnie's abuse. She said she spends $400 a month in medical expenses. She also testified that she owes approximately $19,000 in credit card debt.
¶ 4. On cross examination, Linda admitted that she smokes approximately one pack of cigarettes a day, that she gambles frequently and used many of the marital assets to pay credit card debts incurred from her gambling habit. One of the neighbors testified that she witnessed Lonnie repeatedly acting "mean and cold" to Linda. The neighbor also said Lonnie made sexual advances to her when Linda was not at home. On one occasion, she witnessed Lonnie push Linda to the ground in their front yard.
¶ 5. Lonnie and Linda's two adult children testified on Lonnie's behalf. They testified that they had never seen their father physically or emotionally abuse their mother, but admitted that their father drank heavily. They said both parents gambled excessively.
¶ 6. An employee at Horseshoe Casino testified that the casino records reflect Linda lost about $40,000 from 1997 through 1999 at the Horseshoe Casino. Linda claimed that she allowed other people to use her player's card so all that loss was not due to her gambling. But Linda offered no witness to corroborate her statement.
¶ 7. The chancellor granted Linda the divorce on the ground of habitual, cruel and inhuman treatment based on the evidence of Lonnie's past, excessive drinking, and periodic physical abuse. The chancellor further ruled that all assets were marital and should be divided equally between Lonnie and Linda. He ordered the house to be sold and all debts, including attorneys' fees, to be paid with the proceeds. The chancellor also awarded Linda $800 a month in alimony and ordered Lonnie to pay court costs.
¶ 8. Linda filed a motion to reconsider, asking the chancellor to award her the marital home and increase her alimony award to $2000 a month. The motion was denied. The chancellor based his decision to deny the motion to reconsider on several factors. First, the chancellor noted that Linda would receive a total of $1200 per month in income from alimony and social security benefits. He further noted that Linda had failed to prove she had monthly medical bills amounting to substantial sums or that she was unable to obtain gainful employment. Finally, the chancellor recognized and placed great significance *1217 on the fact that Linda had lost much of the marital assets gambling.

LAW AND ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN REQUIRING THE MARITAL HOME TO BE SOLD.
¶ 9. Linda argues that because her expenses exceed her income, she should be awarded use of the marital home. She further argues that the chancellor did not give proper consideration to the Ferguson factors which apply to the assets and income of the parties.
¶ 10. A chancellor is authorized to address realty assets and to divest title, including that of the marital home. Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994). Concerning equitable division of assets at divorce, the Mississippi Supreme Court has stated:
It is well-established by this Court that the chancery court has the authority to order an equitable division of property that was accumulated through the joint efforts and contributions of the parties. However, there is no automatic right to an equal division of jointly-accumulated property, but rather, the division is left to the discretion of the court.... This Court, therefore, holds that the chancery court is within its authority and power to equitably divide marital assets at divorce.
Id. (citations omitted).
¶ 11. In Ferguson, the Supreme Court promulgated a list of guidelines to assist chancellors in the division of marital property. The court held:
[T]his Court directs the chancery courts to evaluate the division of marital assets by the following guidelines and to support their decisions with findings of fact and conclusions of law for purposes of appellate review. Although this listing is not exclusive, this Court suggests the chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

*1218 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Id. at 928.
¶ 12. In deciding how to equitably divide the assets in this case, the chancellor analyzed the case according to the factors found in Ferguson. He deemed all the property to be marital property and ruled that Lonnie and Linda should each receive fifty percent of the assets and assume responsibility for fifty percent of the debts. Consequently, equal value was assigned to Lonnie's "bread-winning" and Linda's "homemaking" under the first Ferguson factor. Under the second Ferguson factor, the chancellor weighed Linda's wasteful disposal of money caused by her gambling against her. The chancellor also addressed the parties' need for financial security under the seventh Ferguson factor. He found that any discrepancy in Linda's income could be met by Linda obtaining employment. He awarded Linda one-half of all the financial assets including Lonnie's retirement funds, which totaled approximately $90,000.
¶ 13. Linda cites Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), in support of her argument that she should not be ordered to pay her attorney's fees out of the proceeds from the sale of the house. In Hemsley, the chancellor ordered the husband to pay half of the wife's attorney's fees because her income barely covered her monthly expenses even though her interest in the marital assets were enough to pay the fees. In affirming the chancellor's decision, the court in Hemsley relied on Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988), which states, "generally the award of attorney's fees in a divorce case is left to the discretion of the trial court." Based on Cheatham, the chancellor in this case was clearly within his discretion to order Linda to pay her attorneys' fees out of her interest in the proceeds of the sale of the marital home.
¶ 14. Our scope of review in domestic relations matters is limited. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994). This is particularly true "in the areas of divorce and child support." Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). Ordering the marital home to be sold was within the chancellor's discretion, and based upon proper precedent.

II. WHETHER THE TRIAL COURT ERRED IN AWARDING LINDA $800 A MONTH IN PERIODIC ALIMONY.
¶ 15. Linda claims that the chancellor did not make specific findings and arbitrarily determined the amount of periodic alimony Linda should be awarded.
¶ 16. Alimony awards are within the chancellor's discretion, and we may not reverse unless we find the chancellor committed manifest error in his findings of fact and abused his discretion. Ethridge v. Ethridge, 648 So.2d 1143, 1145-46 (Miss. 1995). We will not disturb a chancellor's findings of fact if they are supported by credible evidence in the record. Id. at 1146. To determine whether to award permanent periodic alimony, the chancellor must consider the twelve factors in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993):
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;

*1219 3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
¶ 17. In determining whether to award alimony, the "chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living." Gray v. Gray, 562 So.2d 79, 83 (Miss.1990). Any question as to whether to award alimony and the amount in the event alimony is awarded is largely within the discretion of the chancellor. Smith v. Smith, 614 So.2d 394, 397 (Miss.1993). We will not disturb the chancellor's award on appeal unless it is a product of manifest error or against the overwhelming weight of the evidence. McNally v. McNally, 516 So.2d 499, 501 (Miss.1987). "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." Id.
¶ 18. In this case, the chancellor did not articulate a specific Armstrong analysis for the record. In similar cases, the Supreme Court has noted that while an on-the-record analysis of the factors set out in Ferguson or Armstrong is helpful for appellate review, the lack of that analysis in the record does not always warrant reversal. Godwin v. Godwin, 758 So.2d 384, 387 (Miss.1999) citing Selman v. Selman, 722 So.2d 547, 554 (Miss.1998). Reversal requires manifest error. Id. A review of the chancellor's findings reveals that he did examine the evidence in accordance with the relevant Armstrong factors.
¶ 19. In her motion for reconsideration, Linda claims that she requires $2000 in alimony to meet her expenses. This claim is not supported by evidence in the record. Pursuant to the Armstrong factors regarding the income, expenses, assets, obligations, and needs of the parties, the chancellor found that Linda would receive $1200 a month in income which she could supplement with gainful employment. As required by the second Armstrong factor, health and earning capacity of the parties, the chancellor again found that Linda's claims of medical problems were not supported by competent evidence.
¶ 20. The chancellor did not specifically address factors five, seven and eight under Armstrong concerning the length of the marriage, the age of the parties, and their standard of living. However, the chancellor did discuss factors ten and eleven, fault of the parties and wasteful dissipation of marital assets. The chancellor weighed both the parties' gambling very heavily against them, especially Linda, as there was substantial evidence of the large amount of money she lost gambling.
¶ 21. Despite the fact that the chancellor did not articulate, for the record, how the Armstrong factors applied to the facts, he did apply those factors to the facts in the case. We find that the chancellor's *1220 decision is not manifestly in error and is based on substantial evidence.

III. WHETHER THE TRIAL COURT ERRED IN NOT ORDERING LONNIE TO PROVIDE LINDA WITH MEDICAL INSURANCE.
¶ 22. Linda claims she offered uncontradicted evidence of her health problems and that her medical bills are approximately $400 a month. Lonnie claims that there is no evidence of Linda's medical problems and the Court should keep in mind the totality of the circumstances.
¶ 23. Medical insurance is an award in the nature of alimony. Driste v. Driste, 738 So.2d 763, 766 (Miss.Ct.App. 1998). Here, the chancellor decided not to award Linda with medical insurance. When considering an award of medical insurance as part of an alimony award, we cannot say that the chancellor erred in this case. This issue is without merit.
¶ 24. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING and MYERS, JJ., concur.