IRVING, J., for the Court.
 

 ¶ 1. Monte Stuart Morris and Lou Ann James Morris agreed to an irreconcilable differences divorce and submitted a written agreement to the Lamar County Chancery Court wherein they agreed to property division, child support, and alimony. The agreement was ratified and approved by the chancery court and incorporated in the final judgment of divorce. Four years later, Monte filed a motion to modify the final judgment, arguing, among other things, that his alimony payments should be substantially reduced or terminated. The chancellor denied Monte’s request. Feeling aggrieved, Monte appeals and asserts that the chancellor erred in refusing to reduce or terminate his alimony payments.
 

 
 *919
 
 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 8. Monte and Lou Ann were divorced on November 6, 2001; two children, Kevin Stuart and Anna Claire, were born to the marriage. Kevin was sixteen years old, and Anna Claire was twelve years old at the time the divorce was entered. The final judgment of divorce provided among other things: (1) that the parties would share joint legal custody of the children and that Monte would make child support payments of $500 per child, per month, (2) that Monte would be responsible for maintaining Lou Ann’s medical insurance, (3) that Monte would convey his interest in the marital home to Lou Ann and pay the mortgage, taxes, and insurance, and (4) that Monte would pay Lou Ann $1,500 per month in permanent alimony.
 
 [1]
 

 ¶ 4. On July 27, 2006, Monte filed a motion to modify the final judgment of divorce, alleging that he had experienced a substantial reduction in his income and net worth. Monte also alleged that Lou Ann had received a substantial increase in her income and net worth. Further, Monte argued that Lou Ann had a greater ability to earn income than she did at the time of divorce. Monte petitioned the court to modify the final judgment to reflect: (1) that his obligation to pay child support for Kevin and Anna Claire shall cease when they reach the age of twenty-one, (2) that his obligation to pay taxes and insurance on the marital home be terminated immediately, and (3) that his alimony payments be substantially reduced or terminated.
 

 ¶ 5. Lou Ann filed an answer and counterclaim wherein she acknowledged that Monte was no longer obligated to pay child support for Kevin, as he had reached twenty-one years of age. Lou Ann also requested that Monte’s child support payments for Anna Claire be adjusted to reflect fourteen percent of his adjusted gross income.
 

 ¶ 6. A hearing was held on February 13, 2007. Monte testified that his financial condition had declined to the point that he could no longer afford to pay Lou Ann $1,500 per month in alimony. Following the hearing, the chancellor determined that Monte was no longer required to pay child support for Kevin. The chancellor also determined that Monte’s annual income exceeded $50,000 and increased his child support payments for Anna Claire’s benefit from $500 per month to $583.73 per month.
 
 [2]
 
 The chancellor further determined that Monte’s obligation to pay taxes and insurance on the marital home would cease five years after the retirement of the mortgage. However, the chancellor refused to reduce or terminate Monte’s obligation to pay alimony. It is from this decision that Monte appeals.
 

 ¶ 7. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
 

 ANALYSIS AND DISCUSSION OF THE ISSUE
 

 ¶ 8. “When reviewing a chancellor’s decision, [an appellate court] will accept the chancellor’s findings of fact as long as the evidence in the record reasonably supports those findings.”
 
 Norton v. Norton,
 
 742 So.2d 126, 128-29 (¶ 8) (Miss.1999) (citing
 
 In re Estate of Taylor v. Thompson,
 
 609 So.2d 390, 393 (Miss.1992)).
 
 *920
 
 An appellate court will only disturb a chancellor’s findings in instances where the findings are clearly erroneous or an erroneous legal standard was applied.
 
 Id.
 
 at 129(¶ 8) (citing
 
 Hill v. Se. Floor Covering Co.,
 
 596 So.2d 874, 877 (Miss.1992)).
 

 ¶ 9. In
 
 Steiner v. Steiner,
 
 788 So.2d 771, 776(¶ 15) (Miss.2001), the Mississippi Supreme Court stated that “[s]upport agreements for divorces granted on the ground of irreconcilable differences are subject to modification.” Additionally, the court noted that “[t]he modification can occur only if there has been a material change in the circumstances of one or more of the parties.”
 
 Id.
 
 (citing
 
 Varner v. Varner,
 
 666 So.2d 493, 497 (Miss.1995)). Further, in
 
 Tingle v. Tingle,
 
 573 So.2d 1389, 1391 (Miss.1990) (citing
 
 Clark v. Myrick, 523
 
 So.2d 79, 82 (Miss.1988)), our supreme court stated that the material change must concern circumstances that arise after the original divorce decree was entered. The
 
 Tingle
 
 court also stated that the change could not have been anticipated at the time of the divorce.
 
 Id.
 
 (citing
 
 Morris v. Morris,
 
 541 So.2d 1040, 1043 (Miss.1989)).
 

 ¶ 10. Monte argues that the chancellor erred in failing to grant his motion for a cessation or substantia] reduction of his alimony payments. The alimony provision of the property settlement agreement reads as follows:
 

 ALIMONY.
 
 Husband shall pay to Wife the amount of $1,500.00 per month as permanent alimony, with $750.00 being due and payable on the first (1st) day of each month and the remaining $750.00 being due and payable on the fifteenth (15th) day of each month. This requirement of permanent alimony shall cease upon the death or remarriage of Wife.
 

 ¶ 11. Monte makes two arguments in support of his contention that the chancellor erred in failing to reduce or terminate his alimony payments: (1) that Lou Ann’s receipt of disability benefits constitutes a material change in circumstances, and (2) that since the divorce was granted, Lou Ann has received an increase in income while he has experienced a reduction in income, one that he did not anticipate at the time that the agreement was reached. The crux of Monte’s argument, as it relates to Lou Ann’s increase in income, is based on her receipt of disability benefits following their divorce. In 2001, Lou Ann twice applied for disability benefits; however, her first two requests were denied, and she was not approved until 2003.
 
 [3]
 
 She then received back benefits from the date of her initial filing. Lou Ann testified that, in addition to her disability benefits, she receives income for consulting work that she does several days a week for Deaconess Home Health and Hospice.
 

 ¶ 12. In his brief, Monte asserts that “[w]hen the parties were divorced, Lou Ann did not have disability income to satisfy her standard of living.” It is puzzling to this Court how Monte can argue on appeal that Lou Ann’s receipt of disability benefits constitutes a material change in circumstances when this was clearly not an unanticipated event.
 

 ¶ 13. First, the plain language of their agreement reflects that it was anticipated that Lou Ann would receive disability benefits at some point in the future. The following excerpt is taken from the medical
 
 *921
 
 insurance provision of the property settlement agreement:
 

 Further, Husband shall continue to maintain and pay for Wife’s medical insurance costs, presently being $209.00 per month.
 
 If, in the future, Wife does, in fact, receive disability for which insurance would be applicable, then the parties agree that any reduction in cost to her, as it relates to medical insurance premiums, would be payable by Husband at the reduced amount, and Wife will supply said insurance information to Husband, whether for direct payment or for reimbursement to her.
 
 Also Wife agrees that if the Disability Insurance allows for coverage of the children at a savings from the insurance which is now being supplied by Husband, she will allow the children to be added to the policy for which Husband will continue to be responsible for the premiums and any unpaid amount of deductible or coverage.
 

 (Emphasis added).
 

 ¶ 14. Second, Monte testified at the modification hearing that, although Lou Ann was not working at the time of their divorce, he was aware that she had taken steps to receive disability benefits:
 

 Q. Monte, when you and Lou Ann divorced, was she working to your knowledge?
 

 A. No, not to my knowledge.
 

 Q. Was it your understanding that she had no income at that time?
 

 A. That is my understanding.
 

 Q.
 
 Was she seeking to get on disability at that time to your knowledge?
 

 A.
 
 To my knowledge that was the plan that she was proceeding with.
 

 (Emphasis added).
 

 ¶ 15. Despite Monte’s acknowledgment at the hearing that he was aware when he and Lou Ann entered into the agreement that Lou Ann “was seeking to get on disability,” he now argues that her receipt of those very benefits constitutes a material change in circumstances. We conclude that the chancellor did not err in finding that Monte failed to prove that Lou Ann’s receipt of disability benefits constitutes a material change in circumstances.
 

 ¶ 16. We now turn to Monte’s argument as it relates to his reduction in net worth and income. Monte’s major source of income is derived from his position as vice president of a family-owned collection agency.
 
 [4]
 
 Monte testified that each year he receives a salary, as well as forty-five percent of any profits that the company makes. According to Monte, he has experienced a reduction in income due to competition and a downturn in market conditions. We note at the outset that the record does not contain Monte’s 8.05 statement
 
 [5]
 
 that was considered by the chancellor during the divorce proceedings in November 2001. However, his 2001 federal tax return, which was admitted into evidence during the modification hearing, shows that his income for that year was $158,749. Also, Monte testified at the modification hearing that his net worth at the time of the divorce in 2001 was approximately $650,000. Monte’s assessment of his net worth at the time of the divorce is not contradicted by anything in the record.
 

 ¶ 17. In support of his motion for modification, Monte filed a joint 8.05 statement
 
 *922
 
 with his new wife, Christina. This statement reflects that their net worth at the time of the modification hearing was $552,986.36.
 

 ¶ 18. The record reflects that Monte’s annual salary from 2001 to 2005 was $55,000. In addition to his salary, he received the following amounts in profits from the family-owned business: approximately $80,000 in 2001, $92,000 in 2002, $62,000 in 2003, $48,000 in 2004, and $15,000 in 2005. Monte testified that his salary in 2006 was $75,000 and that he expected to receive $15,000 in year-end profits, although he had not received the $15,000 at the time of the hearing in February 2007. The joint 8.05 statement shows that Monte’s monthly income in February 2007 was $7,583, comprised of $6,250 in salary from the family business and $1,333 in dividends and interest.
 

 ¶ 19. In his bench opinion denying the modification, the chancellor stated the following:
 

 Certainly we’ve had evidence and proof about Monte’s income being reduced. He started at somewhere around 140 or $150,000 when the divorce first occurred. Through some changes, alleged changes, in the industry of his business, the income has dropped somewhere approximately 40 or $50,000. The Court is unable to determine for a fact whether or not that drop in income has affected Monte’s life-style and left him at a disadvantage in a way that would really weigh in his favor to cause the Court to determine that the Court ought to provide some relief because Monte is in a position where he’s unable to meet his obligation.
 

 If the court looks at the assets that Monte has, Monte still has anywhere from four to $500,000 in assets. Monte has the ability as the owner of his business to make adjustments in how he receives income. He even increased his monthly income in a way that produced approximately a $20,000 increase in the year 2006. He’s also going to get profits from his business that is [sic] yet to be determined.
 

 ¶ 20. In
 
 Holcombe v. Holcombe,
 
 813 So.2d 700, 706 (¶32) (Miss.2002), a chancellor refused to reduce a husband’s alimony payments even though the 73-year-old husband had clearly experienced a significant reduction in income and a deterioration in health since the divorce. The parties in
 
 Holcombe
 
 were granted a divorce in 1991 after forty years of marriage.
 
 Id.
 
 at 701 (¶ 1). The husband, who had worked for forty-nine years as a traveling salesman, was ordered to pay the wife periodic alimony.
 
 Id.
 
 at 702 (¶¶ 1-2). In 2000, the husband petitioned the chancery court for a reduction in his alimony payments on two bases: his income had been substantially reduced and his health was deteriorating.
 
 Id.
 
 at 701 (¶ 1). The husband testified that his loss of income was a result of his losing a long-time client from which he generated the majority of his business income.
 
 Id.
 
 at 704 (¶ 14).
 

 ¶21. On appeal, the Mississippi Supreme Court affirmed the chancellor’s decision and noted that “[f]rom 1991 to 1998 [the husband’s] annual gross business income had an estimated average of $138,576.00.”
 
 Id.
 
 at 701 (¶ 1). The court also noted that the husband had experienced a significant reduction in gross business income, as his earnings went from $146,187 in 1998 to $61,116 in 1999.
 
 [6]
 

 Id.
 
 at 702 (¶ 5). The court further noted the chancellor’s findings:
 

 After taking the above into consideration and finding the sole grounds of
 
 *923
 
 fered by [the husband] for the alimony modification to be his decrease in income and deteriorating health, the chancellor refused to modify the divorce decree. He found there was no material change in [the husband’s] circumstances warranting modification. In support of this position, the chancellor noted that [the husband’s] spending habits and lifestyle had not changed as a result of losing the Frisco Manufacturing furniture line; he was still able to travel and had not missed work since the loss of the Frisco line; he had new sources of income from his mandatory retirement and social security payments....
 

 Id.
 
 at 708 (¶ 9).
 

 ¶ 22. As stated, our supreme court affirmed the chancellor, even though it recognized that the husband had experienced a significant reduction in income.
 
 Id.
 
 at 706 (¶ 32). The court noted the chancellor’s finding that the husband’s “lifestyle and spending habits indicate the loss in business had no effect upon his purchasing decisions.”
 
 Id.
 
 The spending habits that the court was referring to was the husband’s purchase of “a 2000 automobile with a large monthly payment despite his loss of income.”
 
 Id.
 
 at 705 (¶ 25). The supreme court summarized its holding as follows:
 

 After reviewing these facts, we conclude that the chancellor did not err in refusing to modify the divorce degree in [the husband’s] favor. Surely [the husband’s] business suffered from the loss of the [long-time client] and his health continues to deteriorate with his increasing age. However, his lifestyle and spending habits indicate the loss in business had no effect upon his purchasing decisions. He admirably continues to work and had not missed any work up to the chancellor’s hearing. Furthermore, he is a salesman of such quality that soon after losing the [long-time client], he was able to pick up two more [clients]....
 

 Id.
 
 at 706 (¶ 32).
 

 ¶23. Here, the chancellor found that Monte’s net worth and income had been substantially reduced but concluded that he could not determine whether this reduction had affected Monte’s lifestyle. On this point, we note that there is nothing in the record that indicates the quality of Monte’s lifestyle at the time of the divorce, but it does shed some light on the lifestyle that Monte has enjoyed since his divorce from Lou Ann. Monte testified: (1) that he has a country club membership, (2) that in 2005, he purchased a used 2003 Cadillac, (3) that he purchased a vehicle for his wife, (4) that he has two “Sea-Doos,” (5) that he has several checking and savings accounts with a total of $26,200 contained therein, as well as several investment accounts which total over $400,000.
 

 ¶ 24. Based on our supreme court’s holding in
 
 Holcombe,
 
 we conclude that the chancellor’s decision to deny Monte a reduction or termination of his alimony payments is supported by substantial evidence. This issue lacks merit.
 

 ¶ 25. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . As a term of their agreement, Monte also agreed to give Lou Ann a lump-sum payment of $100,000, rather than transfer taxable assets to her.
 

 [2]
 

 . The chancellor also ordered that the payments of $583.73 be made retroactive to November 2006.
 

 [3]
 

 . Lou Ann testified that her health problems are the result of a bout with Cushing's Disease. Lou Ann stated that she began having problems from the disease that required three surgeries, approximately three years prior to her divorce. Following the third surgery, she developed meningitis and lapsed into a coma. Lou Ann testified that she still suffers from problems which resulted from the meningitis and the coma.
 

 [4]
 

 . Monte and his sister each own forty-five percent of the company, and his father owns ten percent.
 

 [5]
 

 . Rule 8.05 of the Uniform Chancery Court Rules requires parties in domestic cases to file a financial disclosure statement.
 

 [6]
 

 . The court did not state the husband’s gross business income at the time of the divorce.