## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01658-COA

**CHARLES D. EASTERLING**                                                      **APPELLANT**

**v.**

**LAJUANA EASTERLING**                                                      **APPELLEE**

DATE OF JUDGMENT:                    08/08/2016
TRIAL JUDGE:                                   HON. SUSAN RHEA SHELDON
COURT FROM WHICH APPEALED:   PERRY COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          PHILLIP LLOYD LONDEREE
ATTORNEY FOR APPELLEE:            S. CHRISTOPHER FARRIS
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
DISPOSITION:                                 AFFIRMED: 02/20/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., WESTBROOKS AND TINDELL, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This case considers the chancellor's denial of a motion to reconsider a judgment that granted a modification of alimony payments.  Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY

¶2.     Charles D. Easterling and Lajuana Easterling had been married for thirty-seven years when they were divorced on January 23, 2013.  They entered into a property-settlement agreement that stipulated the terms of their divorce.  Among the terms, Charles was required to pay monthly periodic alimony in the amount of $2,500 to Lajuana; Lajuana retained possession of the marital home; and Charles was obligated to pay the monthly note on the home.

¶3. Prior to and at the time of the divorce, Charles worked as a tool pusher for Ensco, an off-shore oil-drilling contractor. After the divorce, Charles remarried, and he now has an adopted daughter and two stepchildren who reside in his home. However, Charles testified that due to circumstances in the oil industry beyond his control, he was terminated from Ensco in 2015. Charles testified that he was without a regular income. He said that he had attempted to find other employment in the oil industry, but to no avail. He further testified that he picked up odd jobs when available.

¶4. On August 13, 2015, Charles filed a complaint for modification of his alimony obligation. A hearing was held with both Charles and Lajuana in attendance on December 2, 2015. There was no record or written order of the proceedings. But each party agreed that the court temporarily reduced Charles's alimony obligation to $600 per month. From that date until the final judgment, Charles paid the reduced amount of alimony and ceased monthly payments on the home-equity line of credit, which forced Lajuana to begin paying the interest on the mortgage.

¶5. A trial was held on May 10, 2016. The chancellor found that Charles's termination from Ensco was an unanticipated, unforeseen loss of employment beyond his control that resulted in a substantial material change in circumstances. Therefore, the chancellor then analyzed the *Armstrong* factors and granted Charles a permanent reduction of his alimony payments to $1,500 per month.

¶6. Charles then filed a motion to reconsider and asked the chancellor to completely eliminate his alimony obligation. The motion was denied, and Charles has appealed.

ANALYSIS

¶7.     Charles argues that the complete loss of his income justifies either the total elimination of his alimony obligation, or a greater decrease in his alimony obligation than the chancellor granted. Charles claims that his finances are so immediately finite that at this rate, within four years, he will be sixty-five years old and destitute, making compliance with the judgment thereafter impossible.

¶8.     When requesting modification of a previously ordered alimony award, chancellors are vested with general statutory authority to modify divorce decrees and make "new decrees as the case may require." Miss. Code Ann. § 93-5-23 (Rev. 2013). Within this broad authority is the more specific power to increase, decrease, or terminate periodic alimony payments. *Hubbard v. Hubbard*, 656 So. 2d 124, 129 (Miss. 1995). "Unless the chancellor is in manifest error and abused her discretion, we will not reverse." *Peterson v. Peterson*, 129 So. 3d 255, 257 (¶5) (Miss. Ct. App. 2013) (citing *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)). "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." *Armstrong*, 618 So. 2d at 1280.

¶9.     When considering a party's petition to modify or terminate an award of periodic alimony, a chancellor must first determine whether "an unforeseeable and material change in circumstances occurred since entry of the initial divorce decree." *Peterson*, 129 So. 3d at 257 (¶7) (citing *Holcombe v. Holcombe*, 813 So. 2d 700, 703 (¶11) (Miss. 2002)). "The change in circumstance must not be anticipated by the parties at the time of the original

decree." *Holcombe*, 813 So. 2d at 703 (¶11). If no unforeseeable and material change has occurred, then a modification of the alimony award is improper. *Peterson*, 129 So. 3d at 257 (¶7).

¶10. Once "a substantial unanticipated change has in fact occurred, the chancellor should then consider the *Armstrong* factors to determine the appropriate amount of alimony." *Id.* at (¶8) (footnote omitted) (citing *Holcombe*, 813 So. 2d at 703 (¶12)). When analyzing these factors and "deciding whether to modify periodic alimony," chancellors should "compar[e] the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree." *Steiner v. Steiner*, 788 So. 2d 771, 776 (¶16) (Miss. 2001) (citations omitted). As in all alimony-modification cases, "[a]limony, if allowed, should be reasonable in amount, commensurate with the wife's accustomed standard of living, minus her own resources, and considering the ability of the husband to pay." *Gray v. Gray*, 562 So. 2d 79, 83 (Miss. 1990). "[A]limony awards in excess [of] a spouse's ability to pay are '*per se* unreasonable.'" *Sheffield v. Sheffield*, 55 So. 3d 1142, 1145 (¶9) (Miss. Ct. App. 2011) (quoting *Yelverton v. Yelverton*, 961 So. 2d 19, 28 (¶18) (Miss. 2007)).

¶11. Here, the chancellor's final judgment found that Charles's "decrease in income from his loss of employment was not anticipated at the time of the divorce and is a material change in circumstances[, but] . . . the loss of employment does not justify a termination of alimony[.]" After which, the chancellor considered the *Armstrong* factors to determine the proper amount of alimony. *See Holcombe*, 813 So. 2d at 703-04 (¶12).

¶12. "Personal bills cannot be used as a factor to reduce support payments." *Hardin v.*

4

*Grantham*, 201 So. 3d 511, 515 (¶15) (Miss. Ct. App. 2016). Since the divorce, Charles has acquired a new home and land, and has remarried and adopted one child and has two stepchildren. The law is clear that the claim of the divorced wife under an alimony award on the ex-husband's earnings takes precedence over that of a second wife. *De Marco v. De Marco*, 199 Miss. 165, 167, 24 So. 2d 358, 359 (1946). The obligations to the first wife also take precedence over any obligations the ex-husband may have as the result of children with his new wife. *James v. James*, 724 So. 2d 1098, 1104 (¶22) (Miss. Ct. App. 1998). As a result, Charles's post-divorce personal bills and remarriage cannot be used as factors to reduce his support payments. *See Hardin*, 201 So. 3d at 515 (¶15).

¶13. Further, the chancellor considered the *Armstrong* factors and concluded that Charles had not missed any payments on his monthly financial obligations since the divorce. Despite having been fired and claiming that he was in financial jeopardy because of his alimony obligation, all of his debts were current and there was no risk of foreclosure or repossession at the time of the hearing. Charles argues that he was current on all of his debts only because he took on additional credit-card debt through cash advances in order to make the payments. However, "simply alleging, as does [Charles], that one is subsisting on borrowed funds does not show with the required particularity that he is unable to pay." *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995).

¶14. At the time of trial, Charles held more than $400,000 in stocks and an annuity, along with real property, vehicles, and other assets. Here he argues that he will run out of money within four years if he is forced to pay $1,500 a month in alimony, $120 a month in mortgage

payments— including retroactive payments on each—and his reported $7,574.56 in monthly expenses. If this were the case, at that rate without any other income, Charles would be rendered destitute regardless of the court-required support payments.

¶15. At the hearing, Charles could make his obligatory alimony payments to Lajuana, whose living expenses and needs have remained unchanged since the divorce. The supreme court has held:

> [i]n property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached [an] agreement and the chancery court has approved it, we ought to enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.

*Weathersby v. Weathersby*, 693 So. 2d 1348, 1351 (Miss. 1997) (quoting *Bell v. Bell*, 572 So. 2d 841, 844 (Miss. 1990)).

¶16. "[T]he chancellor has substantial discretion in reaching a decision that [she] finds equitable and fair to both parties." *Seale v. Seale*, 863 So. 2d 996, 999 (¶14) (Miss. Ct. App. 2004). The chancellor determined that Lajuana had been substantially dependent upon both her disability payments and the alimony payments from Charles since the divorce to meet her monthly living expenses. Her financial situation has not changed. As a result of Charles's material change in circumstances, the chancellor concluded that a $1,000 reduction in his alimony obligation was warranted. We find the chancellor's reduction in the amount of the alimony was neither manifest error nor an abuse of discretion. The chancellor's judgment is affirmed.

¶17. **AFFIRMED**.

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**