# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01066-COA

**MELVIN CORNELIUS KROHN JR.**                         **APPELLANT**

**v.**

**KAREN DENISE STRAYHAM KROHN**                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/04/2018 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | G. CHARLES BORDIS IV |
| ATTORNEY FOR APPELLEE: | MARK V. KNIGHTEN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 04/21/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT**:

¶1. This is an appeal from a chancery court decision on the parties' petitions and motions for contempt and modification of the terms of their divorce agreement. In April 2016, the Jackson County Chancery Court entered a final judgment of divorce for Melvin Cornelius Krohn Jr. and Karen Denise Strayham Krohn and incorporated their agreement regarding child custody, child support, maintenance, and property. Melvin agreed to pay $1,500.00 per month in child support for their one child and to pay $2,000.00 per month in alimony. After an alleged change in circumstances and disputes between the parties, both filed petitions and motions for contempt and modification. The court found Melvin in contempt for his failure to pay child support and alimony but nevertheless reduced his child support obligation. The

court found Karen in contempt for her failure to provide Melvin access to the child's medical records. Subsequently, the court awarded Karen attorney's fees. Melvin filed a motion to amend the judgment, which the court denied. On appeal, Melvin raises issues with the chancery court's judgment concerning (1) retroactive child support; (2) modification of alimony; and (3) attorney's fees. After reviewing the record and relevant precedent, we affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

¶2.     Melvin and Karen were married on or about May 9, 1987, in Latimer, Jackson County, Mississippi. During the marriage, one female child was born in November 1999. Karen was employed as an executive assistant at Memorial Hospital in Gulfport, earning $39,000.00 per year. Melvin worked for BES Engineering, where he earned $218,000.00 per year. The parties lived together until their separation on or about January 1, 2016.

¶3.     After almost twenty-nine years of marriage, the parties filed a joint complaint for divorce based on irreconcilable differences on February 2, 2016. The court entered a judgment for divorce on April 4, 2016, and incorporated their executed agreement regarding child custody, child support, maintenance, and property ("the Agreement").

¶4.     According to the Agreement, Karen would have physical custody of the child but share joint legal custody with Melvin, and the parties agreed on a visitation schedule. Additionally, each agreed to exchange information concerning the health, education, and welfare of the minor child. Melvin also agreed to pay $1,500.00 per month to Karen in child support and $2,000.00 per month in alimony. Melvin agreed to pay the child's high school

2

tuition as well as her undergraduate college tuition (including room and board). Both agreed that if either one of them were found to be in contempt of any provision of the Agreement, then that party would be responsible for the other's reasonable attorney's fees, together with all court costs.

¶5.    Almost immediately, the parties found it difficult to abide by the terms of the Agreement. On July 12, 2016, Melvin filed a "Petition for Citation for Contempt" against Karen and a motion for relief from the final judgment. Melvin's contempt action was based on (1) Karen's failure to abide by the child custody provisions in the Agreement regarding communication; and (2) Karen's failure to provide Melvin with copies of the child's social security card, birth certificate, and "shot records." In his motion for relief, Melvin alleged that the Agreement was forged. Melvin claimed he knew about a draft of the final Agreement, but he maintained he had not signed the Agreement that was filed. He claimed that Karen had initialed and signed it. He requested the court to require Karen to pay all reasonable attorney's fees, costs, and expenses that he incurred for this matter.

¶6.    In response to Melvin's petition, Karen filed an answer, a counterclaim, and a motion for modification on September 30, 2016. In Karen's answer, she denied all the allegations of contempt in Melvin's petition and counterclaimed for contempt because Melvin had exposed the child to the "illegal activity" of drinking and failed to acquire the proper insurance required by the Agreement.[1] Karen sought sole legal and physical custody of the

---

[1] On February 28, 2017, Karen amended her counterclaim for a citation of contempt to include that Melvin was in contempt for not making alimony payments and child support payments.

child and asked the court to require Melvin to pay her reasonable attorney's fees, costs, and expenses she incurred for this matter.

¶7. On January 12, 2017, the court denied Melvin's motion for relief, finding that there was insufficient evidence that Melvin's signature was forged. The petition for contempt remained pending until April 2018, when it was presented at a hearing. Prior to the final hearing, the parties filed several interim motions, which are not relevant to this appeal, and a temporary order was entered in March 2017.[2] Significant, however, was Melvin's allegation that he was released from his $218,000.00-per-year employment on December 31, 2016; therefore, he requested relief from his financial obligations to pay child support and alimony.[3] Melvin did collect an undisclosed amount of unemployment benefits for four months, until he found employment at Quave Fabrication in late April 2017.[4] He worked for that company for four months until he returned to BES Engineering in September of 2017. He was re-employed at a much lower salary of $84,132.00. Also, during this time, Melvin remarried in July 2017 to his current wife, who does not work. Consequently, Melvin was providing the only income for his new household. On August 22, 2017, the court allowed Melvin to file an amended petition. In it, Melvin sought sole custody of the child and asked that his child support obligation be modified to be consistent with his being granted sole

---

[2] The temporary order, which the chancellor signed, granted Melvin visitation during the school week and alternating weekends. Karen was awarded visitation on alternating weekends. No other changes to the Agreement were made.

[3] Also, the child moved into Melvin's residence in February 2017. There is nothing in the record to indicate why or if the move was ordered or sanctioned by the court.

[4] Melvin's salary for Quave Fabrications was not found in the record.

4

custody.

¶8.    On April 16, 2018, and April 17, 2018, the court heard testimony and evidence regarding the outstanding pleadings of the parties.  Melvin testified that he did not leave his prior job voluntarily.  He testified that he had worked for BES Engineering since August 2012 and had no knowledge that he would be laid off in December 2016.  At the time of the hearing, Melvin was re-employed with BES Engineering, but he was making only $84,242.25 per year.  Melvin provided evidence that he was actively seeking other employment.  But according to his daughter's testimony, Melvin purchased three different vehicles within the time he claims he could not afford to make child support and alimony payments.  Among those vehicles was a $50,000.00 GMC truck.  However, Melvin traded his 2015 GMC truck for a 2014 Camaro to save money on gas mileage and maintenance.  Karen testified that she was still only making $39,000.00 per year.  In addition, the child had moved from private school to public school.

¶9.    The chancellor issued a bench ruling, which was memorialized in a final amended judgment[5] entered on May 4, 2018.  After the chancery court gave Melvin child-support credit,[6] the court found Melvin in willful and contumacious contempt of court, ordered his incarceration, and assessed a $43,100.00 judgment against him for arrearage owed in child

---

[5] The first judgment did not have attorney signatures.

[6] The court gave Melvin a $15,000.00 credit because the child lived in his home from February 2017 through November 2017.

5

support ($4,800.00), alimony ($30,000.00), and attorney's fees ($8,300.00).[7] The court allowed Melvin to purge himself of contempt and be released from jail upon payment of $15,000 of the arrearage, which Melvin paid. The court reduced Melvin's child support obligation from $1,500.00 per month to $982.00 per month (14% of his adjusted gross income), but the court denied his request for a modification of alimony. The court found Karen in contempt for not producing the child's shot records upon Melvin's request.

¶10. On May 10, 2018, Melvin filed a motion to alter or amend the amended judgment, claiming among other things that (1) the court did not order Karen to pay him child support during the time the minor child resided with him; (2) the court failed to consider his loss of all income for a great portion of 2017; (3) the court should not have ordered him to pay Karen's attorney's fees; and (4) the court failed to order Karen to pay his attorney's fees for her contemptuous conduct. On June 25, 2018, the chancery court entered an order partially granting Melvin's motion on matters not relevant to this appeal. The court denied relief on the three issues Melvin raises in his appeal before us.

¶11. Following the chancery court's denial of relief, Melvin filed a timely appeal to this court on July 19, 2018. On appeal, Melvin raises the following issues: (1) whether the chancery court erred in failing to award Melvin child support for the period he had custody of the child; (2) whether the chancery court erred in failing to modify his alimony obligation; and (3) whether the chancery court erred in awarding attorney's fees to Karen and failing to award attorney's fees to Melvin.

---

[7] The chancery court combined the arrearage of the child support, alimony, and attorney's fees and ordered Melvin to pay an additional $500 per month.

6

**STANDARD OF REVIEW**

¶12. This Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Olson v. Bennett*, 271 So. 3d 781, 785 (¶12) (Miss. Ct. App. 2018) (internal quotation marks omitted) (quoting *Rice v. Merkich*, 34 So. 3d 555, 557 (¶7) (Miss. 2010)). "When reviewing questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of law." *Id.*

**DISCUSSION**

**I.      Whether the chancery court erred in failing to order Karen to pay child support to Melvin for the period Melvin had custody of the minor child.**

¶13. "A chancery court has discretion in determining an award of child support." *Gunter v. Gunter*, 281 So. 3d 283, 285 (¶8) (Miss. Ct. App. 2019). "To justify the modification of the child-support provisions of a divorce decree, the moving party must show that there has been a material or substantial change in the circumstances of one of the parties." *Bruton v. Bruton*, 271 So. 3d 528, 533 (¶14) (Miss. Ct. App. 2018). For irreconcilable-differences divorces, the parties' private agreements entered into for the purposes in Mississippi Code Annotated section 93-5-2 (Rev. 2018) are "not enforceable, if not approved by the court." *Sullivan v. Pouncey*, 469 So. 2d 1233, 1234 (Miss. 1985). "The noncustodial parent may be entitled to credit for any additional support which he/she has evinced by satisfactory proof to the trial court." *Smith v. Smith*, 20 So. 3d 670, 674 (¶13) (Miss. 2009).

7

¶14.    In this case, the parties mutually agreed that their minor daughter would reside with Melvin for several months.  There was no court order entered concerning this change in custody.  Nor did the court ever order Karen to pay Melvin support for those months.  Thus, the court had no basis to find Karen in contempt or order her to pay child support retroactively.  Although the court gave no reason for denying Melvin's requested child support for the months the child was living with him, the court relieved him from his court-ordered obligation to pay child support ($15,000.00) during these months.  Accordingly, we find that the chancery court did not abuse its discretion when it failed to order Karen to pay child support for the months Melvin had the child.

## II.    Whether the chancery court erred in failing to modify Melvin's alimony obligation.

¶15.    "When considering a party's petition to modify or terminate an award of periodic alimony, a chancellor must first determine whether an unforeseeable and material change in circumstances occurred since entry of the initial divorce decree." *Easterling v. Easterling*, 245 So. 3d 548, 551 (¶9) (Miss. Ct. App. 2018) (internal quotation mark omitted).  "The change in circumstance must not be anticipated by the parties at the time of the original decree." *Id*. (quoting *Holcombe v. Holcombe*, 813 So. 2d 700, 703 (¶11) (Miss. 2002)).  "If no unforeseeable and material change has occurred, then a modification of the alimony award is improper." *Id*.  "Once a substantial unanticipated change has in fact occurred, the chancellor should then consider the *Armstrong* factors to determine the appropriate amount of alimony." *Id*. at (¶10) (internal quotation mark omitted).  "When analyzing these factors and 'deciding whether to modify periodic alimony,' chancellors should 'compare the relative

8

positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree.'" *Id*. (quoting *Steiner v. Steiner*, 788 So. 2d 771, 776 (¶16) (Miss. 2001)). "Personal bills cannot be used as a factor to reduce support payments." *Hardin v. Grantham*, 201 So. 3d 511, 515 (¶15) (Miss. Ct. App. 2016) (quoting *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995)).

¶16. The *Armstrong* factors that courts use to determine whether a spouse is entitled to alimony include:

> (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; and (12) any other factor deemed by the court to be just and equitable in connection with the spousal support.

*Culumber v. Culumber*, 261 So. 3d 1142, 1151 (¶29) (Miss. Ct. App. 2018) (quoting *Larson v. Larson*, 192 So. 3d 1137, 1142 (¶12) (Miss. Ct. App. 2016) (citing *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993))). The supreme court has held that "in the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." *Prestwood v. Prestwood*, 285 So. 3d 1213, 1216 (¶12) (Miss. Ct. App. 2019) (quoting *Armstrong*, 618 So. 2d at 1280).

¶17. In *Easterling*, we affirmed a chancery court's finding of a material change in the case of a job loss and found that a reduction in his alimony obligation was warranted. *Easterling*,

9

245 So. 3d at 552 (¶16). In that case, Charles and Lajuana Easterling entered into a PSA that required Charles to pay monthly periodic alimony in the amount of $2,500.00 to Lajuana. *Id*. at 550 (¶2). After the divorce, Charles remarried and had an adopted daughter and two stepchildren who resided in his home. *Id*. However, Charles testified that due to a change in circumstances in the oil industry beyond his control, he was terminated from Ensco in 2015. *Id*. at (¶3). Charles sought modification of his alimony obligation, and each party agreed to a temporary order reducing Charles's alimony obligation to $600 per month. *Id*. at (¶4). From that date until the final judgment, Charles paid the reduced amount of alimony. *Id*. At trial, the chancery court found that Charles's termination from Ensco was unanticipated, and that the unforeseen loss of employment beyond his control resulted in a substantial material change in circumstances. *Id*. at (¶5). Therefore, the chancery court then applied the *Armstrong* factors and granted Charles a permanent reduction of his alimony payments to $1,500.00 per month. *Id*. We found the court's "reduction in the amount of the alimony was neither manifest error nor an abuse of discretion." *Id*. at 552 (¶16).

¶18. Like *Easterling*, here Melvin unexpectedly lost his job. Melvin worked for BES Engineering for four years, beginning in August 2012, but the company suddenly laid Melvin off in December 2016.[8] Melvin testified his termination of employment was unexpected. He made an effort to seek new employment, which was proven in the record. At the time of the divorce, Melvin made over $218,000.00 per year. Once he returned to work and at the time of the hearing, Melvin made approximately $84,000.00 per year, which is a decrease of

---

[8] A letter from BES Engineering stated that Melvin's assignment was eliminated due to continued economic challenges within the domestic and global energy market.

10

over $125,000.00 per year.[9] The record indicates that Melvin proved an unanticipated, substantial, and material change in circumstances such that he may be entitled to a modification of monetary obligations after an analysis applying the *Armstrong* factors. The chancery court ruled that Melvin's child support obligation should be modified based on his substantial decrease in income. However, the court erroneously failed to apply the same reasoning to Melvin's alimony obligation as well. To require Melvin to pay $11,784.00 in child support and $24,000.00 in alimony each year, out of $84,000.00 in income, and live and support a second family, is oppressive, unjust or grossly inadequate and evidences an abuse of the chancery court's discretion.

¶19. The chancery court failed to analyze Melvin's request for a reduction in alimony using the *Armstrong* factors. Finding that the chancery court abused its discretion, we remand this matter so that the chancery court may use the *Armstrong* factors to determine whether there should be a reduction in Melvin's alimony payment.

### III. Whether the chancery court erred in its award of attorney's fees.

¶20. In assessing an award of attorney's fees, the chancery court first determines the type of action brought and then uses the appropriate method for a calculation of any attorney's fees to award. Regarding contempt actions, "[w]hen a party is held in contempt for violating a valid judgment of the court, attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Garner v. Garner*, 283 So. 3d

---

[9] It should be noted that Melvin's Uniform Chancery Court Rule 8.05 financial statement, which includes the then-current monthly alimony amount, showed a monthly deficit of $3,351.52.

11

120, 142 (¶98) (Miss. 2019). "Fees awarded on this basis, though, should not exceed the [attorney's time and] expenses incurred as a result of the contemptuous conduct." *Heisinger v. Riley*, 243 So. 3d 248, 259 (¶45) (Miss. Ct. App. 2018). The court "shall make the award [for contempt actions] based on the information already before it and the court's own opinion based on experience and observation[.]" *Taylor v. Timmons (In re C.T.)*, 228 So. 3d 311, 319 (¶21) (Miss. Ct. App. 2017) (quoting Miss. Code Ann. § 9-1-41 (Rev. 2014)). A successful party in a contempt action need not show that he or she was unable to pay their attorney. *Wilkinson v. Wilkinson*, 281 So. 3d 153, 167 (¶52) (Miss. Ct. App. 2019).

¶21. In other matters, e.g., motions for modifications, an award of attorney's fees is based only on the successful party's inability to pay; in such cases, "the Mississippi Supreme Court established several factors [in *McKee*, *infra*,] to determine the proper amount of attorney's fees to award in domestic cases." *Chism v. Chism*, 285 So. 3d 656, 667 (¶39) (Miss. Ct. App. 2019). "The *McKee* factors state that an award of attorney's fees 'should be fair, should compensate only work actually performed, and should be based upon a finding that the work was reasonably required and necessary.'" *Id*. (quoting Deborah H. Bell, *Bell on Mississippi Family Law* § 12.02[l], at 359 (1st ed. 2005) (discussing *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982))). The *McKee* factors include the following:

> (1) relative financial ability of the parties; (2) the skill and standing of the attorney employed, (3) novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) time and labor required, (6) the usual and customary charge in the community, and (7) whether the attorney was precluded from undertaking other employment by accepting the case.

*Baumbach v. Baumbach*, 242 So. 3d 193, 208-09 (¶54) (Miss. Ct. App. 2018) (Fair, J.,

12

concurring in part and dissenting in part). This Court permits an award of attorney's fees "in a divorce case where the requesting party establishes an inability to pay." *Stewart v. Stewart*, 2 So. 3d 770, 776 (¶18) (Miss. Ct. App. 2009) (quoting *Gray v. Gray*, 745 So. 2d 234, 239 (¶26) (Miss. 1999)). "However, if a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." *Id.* (citation omitted).

¶22. In *Wilkinson*, we acknowledged that although both parties were found in contempt, the court can still award one party attorney's fees. *Wilkinson*, 281 So. 3d at 167 (¶55). There, Rod and Stephanie Wilkinson were both found in contempt for making derogatory remarks; therefore, the court declined to award attorney's fees to either party on that issue. *Id.* at (¶53). However, Rod argued Stephanie could not receive any attorney's fees because she was found in contempt on one issue (the unclean hands doctrine[10]), but this court was not persuaded by Rod's argument. *Id.* at (¶55). In addition to the contempt for derogatory remarks, the court found Rod in contempt regarding child support and visitation. *Id.* at 159 (¶5). We affirmed the award to Stephanie of $3,700.00 in attorney's fees for Rod's contempt of child support and visitation requirements. *Id.* at 169 (¶62).

¶23. In *Wilkinson*, we also found the chancery court properly analyzed the attorney's fees for the contempt actions and other actions separately. For matters other than contempt, the court used the inability to pay standard to determine attorney's fees, which incorporated *McKee* factors in determining Stephanie's inability to pay. *Id.* at (¶58). Therefore, we

---

[10] "[T]he clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue." *Vincent v. Rickman*, 167 So. 3d 245, 249 (¶11) (Miss. Ct. App. 2015) (quoting *Bailey v. Bailey,* 724 So. 2d 335, 337 (¶6) (Miss. 1998)).

affirmed the award of $4,933.00 in attorney's fees not attributable to the contempt actions. *Id.* at 169 (¶62).

¶24.    In this case, like *Wilkinson*, we find no error in the chancery court's award of attorney's fees for Karen, even though she was found in contempt on a minor issue. Here, the chancery court found Melvin in willful, wanton, and contumacious contempt for his failure to pay child support and failure to pay alimony. The court also found Melvin in contempt for his failure to immediately obtain life insurance in the amount of $50,000.00. The court only found Karen in contempt for her failure to produce a copy of the child's shot records upon Melvin's request. Therefore, the court did not err in awarding Karen attorney's fees. However, the court did err in the amount of attorney's fees it awarded Karen.

¶25.    The record shows attorney's fees based on the cumulative amount of time spent on the contempt actions and modifications matters. Karen's pleadings involved issues other than contempt, such as modification of custody and visitation. Prior to the final hearing, the parties went to court on these matters and resolved all but the contempt matters.

¶26.    The chancery court erred in awarding Karen attorney's fees for her representation in all these matters. The only factor that the chancery court addressed in ruling to award all attorney's fees to Karen was the number of times the parties have been to the court. Without more, we find that the chancery court's decision to award attorney's fees should be reversed and remanded for proper determination of the amount of attorney's fees attributable to the contempt actions and the amount of attorney's fees owed, if any, for the other matters.

**CONCLUSION**

14

¶27. For the reasons stated above, we affirm the chancery court's denial of retroactive child support to Melvin. But we reverse the chancery court's judgment on modification of alimony and attorney's fees. We reverse and remand the denial of modification of alimony to the court to apply the *Armstrong* factors in determining the amount of alimony Melvin is required pay going forward. We also reverse and remand the award of attorney's fees for the chancery court to use the applicable standards in determining attorney's fees.

¶28. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**