# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01378-COA

**JASON GILLENWATER**                                                    **APPELLANT**

**v.**

**WANDA LISA REDMOND F/K/A WANDA LISA**                    **APPELLEE**
**GILLENWATER**

DATE OF JUDGMENT:                 12/02/2021
TRIAL JUDGE:                            HON. TANYA L. HASBROUCK
COURT FROM WHICH APPEALED:   JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         MARK V. KNIGHTEN
ATTORNEY FOR APPELLEE:          SUSAN WELDON CULPEPPER
NATURE OF THE CASE:               CIVIL - DOMESTIC RELATIONS
DISPOSITION:                          AFFIRMED - 04/04/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On December 2, 2021, the Jackson County Chancery Court entered a final judgment

that modified the amount of Jason Gillenwater's alimony obligation payable to his former

wife Wanda Redmond.   Jason's monthly alimony obligation was reduced after the

chancellor's consideration of the testimony and evidence of in-kind and monetary support

Wanda received as a result of her cohabitation with her boyfriend, Allen Rouse.  Aggrieved

by the chancery court's decision to modify rather than terminate his monthly alimony

obligation based on Wanda's cohabitation and mutual support, Jason appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.     Jason and Wanda were divorced pursuant to a judgment styled "Findings of Fact,

Conclusions of Law, Ruling, and Judgment of the Court" (divorce judgment) entered on June 14, 2018. The divorce judgment awarded Wanda permanent periodic alimony in the amount of $700 per month. At the time of their divorce, Jason was a pipe welder making $8,759 per month, and Wanda was a childcare provider making $534 per month. The parties had been married for twenty-two years. Jason was 48, and Wanda was a 56-year-old cancer survivor.

¶3. On February 24, 2021, Jason filed a "Petition for Termination and/or modification of alimony and Petition for Citation for Contempt"(petition).[1] Jason alleged that there had been a "material change in circumstances necessitating a modification and/or termination of alimony." Jason argued that since the date of his divorce from Wanda, he was laid off from his employment and had not had a job as a pipe welder since September 23, 2020. Further, Jason claimed, and the parties stipulated prior to trial, that Wanda had been cohabiting with her boyfriend Rouse since January 2020. According to Jason, Rouse provided mutual support and in-kind services that negated Wanda's need for alimony.

¶4. The trial on Jason's petition took place on September 16, 2021. Jason and Wanda were the only two witnesses to testify. At the conclusion of the trial, the chancery court requested that each party submit a "two-page letter brief" in support of their respective positions.

¶5. The chancery court entered a final judgment on December 2, 2021. The court found that Jason had not produced any records showing his income for the 2020 tax year, provided no medical proof to show that he could not work or that he had any work limitation, and

_____

[1] The issue of alleged contempt contained in Jason's petition was resolved prior to trial, and Jason withdrew that issue for the court's consideration.

provided no proof that he had attempted to find other employment during any periods of unemployment as a union pipe welder. As a result, the chancery court held that Jason did not meet "his burden of proof establishing a material change of circumstances for which the court should consider a reduction or termination of Jason's permanent periodic alimony obligation" based on his employment status.

¶6. As to Jason's claim of Wanda's cohabitation, Wanda admitted that she had been cohabiting with Rouse but denied that he was providing any mutual support. The chancellor found that because of the "presumption of cohabitation," Wanda had the burden to establish that there was no mutual support. The chancellor found that Wanda's proof did not overcome the presumption that a material change of circumstance had occurred as a result of her cohabitation. Therefore, the chancellor proceeded to consider the *Armstrong*[2] factors. Although the chancery court did not terminate Jason's alimony obligation as requested, the court alternatively held that "the support from splitting certain living expenses and the in-kind services [Wanda] receives from the cohabitation reduces, but does not eliminate her financial need for alimony." In turn, the chancery court held that "the alimony obligation of Jason Gillenwater to Wanda Lisa Redmond f/k/a Wanda Gillenwater should be and [was] modified to $400.00 per month beginning October 1, 2021." Jason filed his notice of appeal on December 16, 2021.

## STANDARD OF REVIEW

¶7. "Our scope of review of an alimony award is familiar and well settled. Alimony

---

[2] *Armstrong v. Armstrong,* 618 So. 2d 1278 (Miss. 1993).

awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion." *Armstrong*, 618 So. 2d at 1280 (citations omitted). "This Court will not disturb a chancellor's ruling if the findings of fact are supported by credible evidence in the record." *Ethridge v. Ethridge*, 648 So. 2d 1143,1146 (Miss. 1995).

## ANALYSIS

¶8.     Jason argues one issue on appeal. He claims that the chancery court erred in modifying alimony rather than terminating his obligation on the basis of Wanda's cohabitation and the finding of mutual financial support and in-kind services.

¶9.     "The purpose of permanent periodic alimony is to be a substitute for the marital-support obligation." *Harris v. Harris*, 241 So. 3d 622, 625 (¶8) (Miss. 2018) (citing *Rogillio v. Rogillio*, 57 So. 3d 1246, 1250 (Miss. 2011)). "The award of permanent periodic alimony arises from the duty of the financially independent spouse to support the financially dependent spouse." *Id*. Within their broad authority, chancellors have the "specific power to increase, decrease, or terminate periodic alimony payments." *Easterling v. Easterling*, 245 So. 3d 548, 550 (¶8) (Miss. Ct. App. 2018). This Court has held that "[w]hen considering a party's petition to modify or terminate an award of periodic alimony, a chancellor must first determine whether 'an unforeseeable and material change in circumstances occurred since [the] entry of the initial divorce decree.'" *Id*. at 551 (¶9). The party seeking the modification has the burden to prove that there has been such a change. *McCraw v. McCraw*, 759 So. 2d 519, 521 (¶4) (Miss. Ct. App. 2000). If the chancellor determines that there has been an

4

unanticipated and material change in circumstances, the chancellor should then consider the

*Armstrong* factors to determine the appropriate amount of alimony. *Peterson v. Peterson*,

129 So. 3d 255, 257 (¶8) (Miss. Ct. App. 2013). In *Heiter v. Heiter ex. rel. Sheffield*, 192 So.

3d 992, 996 (¶10) (Miss. 2016), the Mississippi Supreme Court explained:

> In *Scharwath*, this Court officially adopted the Florida rule and held "that proof of cohabitation creates a presumption that a material change in circumstances has occurred." *Scharwath v. Scharwath*, 702 So. 2d 1210, 1211 (Miss. 1997). This presumption shifts the burden to the recipient spouse to produce evidence contradicting mutual financial support. *Id.* However, the paying spouse still must show that the cohabitation results in "a situation of mutual support between the recipient spouse and another individual which **alters the recipient spouse's financial needs**" before alimony can be modified. *Id*.

(Emphasis added).

¶10.    In the case at hand, the parties stipulated that Wanda began cohabiting with Rouse in

January 2020. Due to the parties' stipulation, the chancery court held that there was a

"presumption of cohabitation and [therefore] the burden [was] on Wanda to establish there

was no mutual financial support." The chancery court further held that Wanda did not meet

that burden. More specifically, the chancery court held:

> Under the circumstances of this case, Wanda and Allen splitting household expenses is some mutual support, and Allen's work around the house also are services of monetary value. . . . As such, consideration of the *Armstrong* factors is necessary to determine whether the permanent periodic alimony obligation should be modified and comparison made of the relative positions of the parties at the time of the request for modification.

Jason's sole argument on appeal stems from the chancery court's analysis of the final prong

of the test and whether the mutual support altered Wanda's financial needs.

¶11.    The final judgment discussed all ten of the *Armstrong* factors as well as additional

5

factors "deemed by the court to be 'just and equitable' in connection with the setting of spousal support." After consideration of the *Armstrong* factors and comparing the relative positions of the parties, the chancery court held that "the support from splitting certain living expenses and the in-kind services [Wanda] receives from the cohabitation **reduces**, but **does not eliminate** her financial need for alimony." (Emphasis added).

¶12. In its analysis of the final *Armstrong* prong, the court reiterated the fact that there was a "great disparity between the wage-earning capacity of Wanda and Jason" and Jason's lack of evidence to support his claim that he could not find similar or other work. The chancellor also noted that while she acknowledged Wanda was cohabiting with Rouse and sharing expenses, her expenses would be higher if she was required to pay certain utilities and responsible for all upkeep and maintenance on the home. Finally, the chancellor acknowledged the high mileage on Wanda's vehicle and her expected need for a newer vehicle in the near future. Wanda contends that she does not intend to marry Rouse and that it would be a struggle for her to get by without the alimony payments from Jason. Ultimately, the chancery court held that despite the mutual and in-kind support, Wanda still had a need for alimony.

¶13. Similarly, in *Heiter*, 192 So. 3d at 997 (¶16), the Mississippi Supreme Court explained that "[t]he chancellor followed this Court's instruction in reviewing this matter on a case-by-case basis. In doing so, the chancellor found sufficient evidence that Lindalyn's needs were not altered by the support provided by Curtis. The chancellor did not abuse her discretion in failing to modify alimony . . . ." In the case at hand, without alimony from Jason, and

taking into consideration Rouse's contribution to mutual support, Wanda would still be struggling to cover her monthly expenses. "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Hall v. Hall*, 134 So. 3d 822, 825 (¶8) (Miss. Ct. App. 2014). Given the facts of this particular case, the chancery court did not abuse its discretion by not terminating the periodic alimony but, instead, modifying the amount of Jason's alimony obligation.

## CONCLUSION

¶14. After reviewing the record, we find that the chancery court did not err in reducing Jason's alimony obligation rather than terminating it.

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, McCARTY AND SMITH, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**